UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

IN RE:

EMLYN COAL PROCESSING, LLC                    CASE NO. 11-61483
                                              CHAPTER 11
        DEBTOR IN POSSESSION

---

## MOTION FOR INTERIM USE OF CASH COLLATERAL

---

Comes Emlyn Coal Processing, LLC (the "Debtor" or "Debtor in possession"), by counsel, and pursuant to 11 U.S.C. § 363, Fed. R. Bankr. P. 4001, and other applicable law, hereby moves the Court for the entry of the Interim Cash Collateral Order (the "Interim Order") tendered herewith and for authority to use cash collateral as set forth on Exhibit A for an interim period (the "Budget Period"), until a final hearing for continued use can be held, and to provide adequate protection as set forth herein. The Debtor states that entry of the Interim Order is necessary to ensure continued operations and to protect and preserve the value of the Debtor's assets and ongoing operations.  In support of the Motion, the Debtor states as follows:

### JURISDICTION AND VENUE

1.      On November 4, 2011 (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code").  The Debtor is operating its business as a debtor and debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2.      This Court has jurisdiction over this Chapter 11 case under 28 U.S.C. §§ 157 and 1334.  This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A).

3.    The Debtor is a Minnesota limited liability company which maintains its principal place of business in Whitley County, Kentucky.  Accordingly, venue for the Debtor's Chapter 11 case is proper in this District under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

4.    Emlyn Coal Processing, LLC, is a Minnesota limited liability company ("Emlyn") authorized to conduct business in Kentucky. Montie's Resources, LLC, is a Tennessee limited liability company ("Montie's" and with Emlyn, the "Debtors") authorized to conduct business in Kentucky.  Bartolomea (Bart) Montanari ("Montanari") is the managing member and owner of one hundred percent (100%) of the membership interests in both Debtors.  Montanari is a resident of Tennessee.

5.    Montie's owns or leases at least 116 million tons of coal reserves in Kentucky and Tennessee.  Approximately 22 million tons of the reserves are believed to be high grade Blue Gem Jellico and Splint seam coals which exist in limited quantities and are used by the ferrosilicon and ferroalloy metal markets. This type of coal generally sells in the $175.00 per ton range.  The Debtors believe the value of the coal reserves is sufficient to offer adequate protection for its secured creditors and the potential for a payment to unsecured creditors.

6.    David Kloeber and Mr. Montanari formed Emlyn in July, 2007 with each owning fifty percent (50%) of the membership interests.  The members agreed to a business plan for Emlyn whereby Mr. Kloeber was to provide additional funds while Mr. Montanari was to contribute the reserves, gas and timber assets and manage the business.  The business plan was initiated by the purchase and operation of a coal tipple and processing plant in Emlyn, Kentucky (the "Emlyn Tipple").  In addition to processing coal, Emlyn actively mines high quality coal at the Corn Creek mine owned by Montie's in Woodbine, Kentucky and the Swan Pond mine in

Owsley County, Kentucky.  Emlyn also purchases coal from other mining companies to process

and sell.  The business plan also provided for the purchase of another processing plant for

London, Kentucky to process the lower grade coal.

7.      Rather than providing financing as a contribution to the equity of the Debtors, Mr.

Kloeber made multiple secured loans to the Debtors to purchase equipment and pay operating

expenses.  However, after August 2008, Mr. Kloeber stopped providing funding for Emlyn.

According to a recent lawsuit filed in the United States District Court for the Eastern District of

Kentucky, Mr. Kloeber now claims he is owed approximately $12,300,000 by the Debtors.  The

lawsuit is styled *David N. Kloeber, Jr. v. Montie's Resources, LLC, et al.*, Case No. 5:11-cv-

00313-JMH (the "Kloeber Kentucky Action").

8.      After Mr. Kloeber declined to loan and/or invest additional funds to Emlyn, Mr.

Montanari agreed to purchase his fifty (50) percent interest in January, 2009 for $3,380,753.00.

Mr. Kloeber now claims that the sums allegedly due him are secured by essentially all assets of

Monties, Emlyn and the Bartolomea and Lisa Montanari Family Limited Partnership, as well as

being personally guaranteed by Mr. and Mrs. Montanari.  In addition to the Kloeber Kentucky

Action, Mr. Kloeber initiated a foreclosure action against Montie's in Tennessee and has

attempted to assert control over Emlyn by claiming the ability to exercise governance rights

under a pledge of the membership interests in Emlyn.  As a result, customers, employees and

vendors of Emlyn are likely to be confused about the operations of Emlyn at a crucial time.

9.      At the urging of Globe Specialty Metals, Inc. and certain of its affiliates

("Globe"), in early 2011 Emlyn agreed to ship essentially all of its stoker coal to Globe based on

its expression of interest in acquiring an interest in Emlyn.  However, no transaction ever closed.

In August, 2011, the offer to acquire a portion of Emlyn was withdrawn and Globe acquired

Emlyn's chief competitor, Alden Resources, LLC.  On August 4, 2011, Globe rejected a large shipment of coal and refused to pay Emlyn, contrary to the terms of the supply contract between the parties and their prior course of dealing.  As a result, Emlyn began to experience liquidity issues and fell behind on many of its financial obligations.

10.     After Globe refused to honor its coal supply contract, Emlyn promptly contacted other potential customers for the Blue Gem coal processed at the Emlyn Tipple and acted to obtain or extend permits for other mining sites. Emlyn recently obtained 2 new permits to mine certain Blue Gem and Jellico coal seams and expects an additional permit for this purpose in mid-December.  The Debtor projects it will be able to more than double revenues in the coming months as it repositions itself in the market to accommodate for the sudden and devastating actions of Globe. Sales in November are expected to be approximately double what the October sales were (subject now to the disruptions caused by the necessity of chapter 11 filings) and the Debtor continues efforts to acquire new customers.  Nevertheless, the Debtor is not relying on an increase in revenues during the Budget Period, but has  conservatively estimated its revenues and expenses.

## **REQUESTED RELIEF**

11.     Pursuant to a preliminary investigation and review, the Debtor believes the following individuals and entities may claim an interest in the Debtor's Cash Collateral, as defined in 11 U.S.C. §363(a):[1]

Globe BG, LLC

David N. Kloeber, Jr.

United States of America, Internal Revenue Service

Kentucky Department of Revenue

Kentucky Division of Unemployment Insurance

(hereinafter "Cash Collateral Creditors").  The Debtor hereby requests the authority to use Cash

Collateral on an interim basis as set forth on <u>Exhibit A</u>, and to set a final hearing for continued

cash use.  Upon information and belief, the value of the collateral which secures the claims of the

cash collateral creditors exceeds the amount of said claims.  As used herein, "Cash Collateral"

shall mean (i) all cash, negotiable instruments, documents of title, securities, deposit accounts or

other cash equivalents derived from any secured creditor's collateral; and (ii) proceeds, rents, or

profits of any secured creditor's collateral, including without limitation all amounts (A) received

by the Debtor in the collection of the Debtor's prepetition account receivables and received by

either the Debtor or its assignee, and (B) generated by the Debtor's operations, both prepetition

and postpetition, and received by the Debtor or its assignee.

12.     The Debtor's need to use Cash Collateral is essential to continuation of this

Chapter 11 proceeding and to ensure continued going-concern operations to maximize the

recovery to all creditors.  Without the use of Cash Collateral as a means of providing working

capital, the Debtor cannot meet its ongoing obligations incurred in the ordinary course of

business.  In short, the Debtor is unable to operate without the use of Cash Collateral and the

entry of an interim Order is necessary to avoid immediate and irreparable harm to the Debtor's

operations, its creditors and other parties in interest.

13.     To preserve the value of Debtor's assets, the Debtor requires the interim use of

Cash Collateral and without such use, the value of the Debtor's assets will immediately and

---

[1] Inclusion of a creditor in this Motion is not an admission or concession of the existence or validity of a valid lien against the Debtor's cash collateral or any other asset, but is intended to provide the broadest possible notice to any such potential creditors.

substantially diminish and the Debtor would be forced to cease its operations.

14.     Under 11 U.S.C. § 363(c)(2), a debtor "may not use, sell or lease cash collateral . . . unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section."

15.     The Debtor is unable to otherwise obtain funds, either unsecured or secured, in an amount necessary for the maintenance and preservation of the Debtor's assets from sources other than as provided by the use of Cash Collateral pursuant to the terms of the Interim Order or such other interim order as the Court  may approve.

16.     Good cause has been shown for the entry of the Interim Order.  Among other things, entry of the Interim Order will allow the Debtor to maintain its operations and preserve its assets, to maximize recovery to all creditors.  Further, the use of Cash Collateral will allow the Debtor to pay wages and other expenses necessary to maintain the Debtor's ongoing operations.

17.     Additionally, the Debtor requests a "carve-out" of Cash Collateral in the sums set forth in its monthly budget for legal and accounting fees.  The "carve-out" is essential for the Debtor to pay its accountants and attorneys in these Chapter 11 proceedings.  If a Committee is appointed in this case, the Debtor will seek permission for a carve-out to pay fees associated with the operation of a Committee.

18.     The Debtor proposes entry of an Interim Order pursuant to <u>Exhibit A</u> attached hereto until such time as a final hearing may be held.  As adequate protection for the asserted liens in Cash Collateral of the Cash Collateral Creditors, the Debtor proposes said Creditors receive replacement liens in postpetition accounts receivable generated by the Debtor's

postpetition operations to the extent of the Debtor's use of Cash Collateral to the same extent,

validity, and priority as such liens existed on the Petition Date.  As further adequate protection,

the Debtor shall account for all cash use, and the proposed cash use is being incurred to preserve

property of the Estate.

19.    The proposed interim use of Cash Collateral is for the time period until such date

as the Court may set a final hearing on this Motion, which final hearing date is likewise being

requested hereby.

WHEREFORE, the Debtor respectfully requests entry of the Order for Interim Use of

Cash Collateral tendered herewith.

Respectfully submitted,

DELCOTTO LAW GROUP PLLC

/s/ Dean A. Langdon, Esq.
J. Wesley Harned, Esq.
200 North Upper Street
Lexington, KY 40507
Telephone:  (859) 231-5800
Facsimile:   (859) 281-1179
dlangdon@dlgfirm.com
wharned@dlgfirm.com
COUNSEL FOR DEBTOR AND
DEBTOR IN POSSESSION
(UNDER PENDING APPLICATION)

TROUTMAN & NAPIER, PLLC

/s/ Gregory A. Napier
Hon. Gregory A. Napier
Firebrook Mansion
4740 Firebrook Boulevard
Lexington, KY  40513
Telephone: 859-253-0991
Facsimile: 888-877-1147
gnapier@troutmannapier.com
C0-COUNSEL FOR DEBTOR AND
DEBTOR IN POSSESSION
(UNDER PENDING APPLICATION)

# Exhibit A

EMLYN COAL PROCESSING, LLC
ESTIMATED WEEKLY BUDGET

| | WEEK 1 | WEEK 2 | WEEK 3 | WEEK 4 | WEEK 5 | WEEK 6 | WEEK 7 | WEEK 8 | WEEK 9 | WEEK 10 | WEEK 11 | WEEK 12 | WEEK 13 | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | | |
| COAL SALES | 194,261.54 | 194,261.54 | 194,261.54 | 194,261.54 | 194,261.54 | 194,261.54 | 194,261.54 | 194,261.54 | 194,261.54 | 194,261.54 | 194,261.54 | 194,261.54 | 194,261.54 | 2,525,400.00 |
| OTHER REVENUE | | | | | | | | | | | | | | 0.00 |
| | | | | | | | | | | | | | | |
| TOTAL RECEIPTS | 194,261.54 | 194,261.54 | 194,261.54 | 194,261.54 | 194,261.54 | 194,261.54 | 194,261.54 | 194,261.54 | 194,261.54 | 194,261.54 | 194,261.54 | 194,261.54 | 194,261.54 | 2,525,400.00 |
| | | | | | | | | | | | | | | |
| **OERATING DISBURSEMENTS** | | | | | | | | | | | | | | |
| **COST OF PRODUCTION** | | | | | | | | | | | | | | |
| PRODUCTION COSTS COAL | 77,005.00 | 77,005.00 | 77,005.00 | 77,005.00 | 77,005.00 | 77,005.00 | 77,005.00 | 77,005.00 | 77,005.00 | 77,005.00 | 77,005.00 | 77,005.00 | 77,005.00 | 1,001,065.00 |
| WAGES | 20,930.00 | 20,930.00 | 20,930.00 | 20,930.00 | 20,930.00 | 20,930.00 | 20,930.00 | 20,930.00 | 20,930.00 | 20,930.00 | 20,930.00 | 20,930.00 | 20,930.00 | 272,090.00 |
| PAYROLL TAXES | 1,900.00 | 1,900.00 | 1,900.00 | 1,900.00 | 1,900.00 | 1,900.00 | 1,900.00 | 1,900.00 | 1,900.00 | 1,900.00 | 1,900.00 | 1,900.00 | 1,900.00 | 24,700.00 |
| FREIGHT IN | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 156,000.00 |
| FREIGHT OUT | 32,815.38 | 32,815.38 | 32,815.38 | 32,815.38 | 32,815.38 | 32,815.38 | 32,815.38 | 32,815.38 | 32,815.38 | 32,815.38 | 32,815.38 | 32,815.38 | 32,815.38 | 426,600.00 |
| EQUIP LEASES | | | | | | | | | 10,000.00 | | | | 10,000.00 | 20,000.00 |
| | | | | | | | | | | | | | | |
| TOTAL COST OF PRODUCTION | 144,650.38 | 144,650.38 | 144,650.38 | 144,650.38 | 144,650.38 | 144,650.38 | 144,650.38 | 144,650.38 | 154,650.38 | 144,650.38 | 144,650.38 | 144,650.38 | 154,650.38 | 1,900,455.00 |
| | | | | | | | | | | | | | | |
| **GENERAL & ADMINISTRATIVE** | | | | | | | | | | | | | | |
| INSURANCE | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 37,700.00 |
| LEGAL & PROFESSIONAL | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 13,000.00 |
| RENT | 4,400.00 | 4,400.00 | 4,400.00 | 4,400.00 | 4,400.00 | 4,400.00 | 4,400.00 | 4,400.00 | 4,400.00 | 4,400.00 | 4,400.00 | 4,400.00 | 4,400.00 | 57,200.00 |
| TAXES | 2,300.00 | 2,300.00 | 2,300.00 | 2,300.00 | 2,300.00 | 2,300.00 | 2,300.00 | 2,300.00 | 2,300.00 | 2,300.00 | 2,300.00 | 2,300.00 | 2,300.00 | 29,900.00 |
| UTILITIES | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 2,900.00 | 37,700.00 |
| OTHER | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 26,000.00 |
| MEMBER SALARY | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 97,500.00 |
| | | | | | | | | | | | | | | |
| TOTAL G & A | 23,000.00 | 23,000.00 | 23,000.00 | 23,000.00 | 23,000.00 | 23,000.00 | 23,000.00 | 23,000.00 | 23,000.00 | 23,000.00 | 23,000.00 | 23,000.00 | 23,000.00 | 299,000.00 |
| | | | | | | | | | | | | | | |
| **OTHER EXPENDITURES** | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| DIP ATTORNEY FEES | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 65,000.00 |
| ADEQUATE PROT PYMTS | | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 82,500.00 |
| CREDITORS COMMITTEE FEES | | | | | | | | | | | | | | 0.00 |
| TRUSTEE FEES | | | | | | | | | | | | | 6,500.00 | 6,500.00 |
| | | | | | | | | | | | | | | |
| TOTAL OTHER EXP | 5,000.00 | 5,000.00 | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 | 12,500.00 | 19,000.00 | 154,000.00 |
| | | | | | | | | | | | | | | |
| NET RECEIPTS | 21,611.15 | 21,611.15 | 14,111.15 | 14,111.15 | 14,111.15 | 14,111.15 | 14,111.15 | 14,111.15 | 4,111.15 | 14,111.15 | 14,111.15 | 14,111.15 | -2,388.85 | 171,945.00 |
| | | | | | | | | | | | | | | |
| CUMULATIVE NET RECEIPTS | 21,611.15 | 43,222.31 | 57,333.46 | 71,444.62 | 85,555.77 | 99,666.92 | 113,778.08 | 127,889.23 | 132,000.38 | 146,111.54 | 160,222.69 | 174,333.85 | 171,945.00 | |