UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

IN RE:

EMLYN COAL PROCESSING, LLC            CASE NO. 11-61483
                                                                      CHAPTER 11

DEBTOR IN POSSESSION

**AFFIDAVIT OF BARTOLOMEA MONTANARI
IN SUPPORT OF CHAPTER 11 PETITIONS**

The Affiant, Bartolomea Montanari, after being first duly sworn, deposes and states as follows:

1. My name is Bartolomea ("Bart") Montanari and I have personal knowledge of the matters stated herein and, if called upon to testify, could and would testify competently thereto.

2. I submit this Affidavit in support of the "First Day Motions" filed with Debtors' voluntary petitions for reorganization under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). This Affidavit describes the businesses of the Debtors and the developments which led to the Debtors' filing of these voluntary chapter 11 petitions.

**I. BACKGROUND & OVERVIEW OF DEBTOR BUSINESSES**

3. I am both the managing member ("Manager") and own one hundred percent (100%) of the membership interests in both Emlyn Coal Processing, LLC, a Minnesota limited liability company ("Emlyn") and Montie's Resources, LLC, a Tennessee limited liability company ("Montie's." and with Emlyn, the "Debtors") and as such I am intimately familiar with the operations, assets and liabilities.

4. I have been the sole owner and served as Manager of Montie's since May, 2003.

5. Currently, Monties owns or leases at least 116 million tons of coal reserves in Kentucky and Tennessee. Approximately 22 million tons of the reserves are believed to be high grade Blue Gem Jellico and Splint seam which are used by the ferrosilicon and ferroalloy markets. This type of coal generally sells in the $175.00 a ton range. Supplies of this type of coal are limited both geographically and by quantity, and Monties is believed to hold some of the largest reserves of such coal.

6. Monties was actively engaged in mining coal to be processed at the Emlyn Tipple until August 31, 2009. Though Monties is not currently operating, it maintains and owns leases, permitted sites, and also has an active coal mine in Woodbine, Kentucky representing revenue producing assets (the Woodbine site is mined by Emlyn).

7. David Kloeber and I formed Emlyn in July of 2007 each owning fifty percent (50%) of the membership interests. Mr. Kloeber and I devised a business plan for Emlyn that involved a two-part business plan. Mr. Kloeber committed to provide financing to the Debtors to effect the plan while I contributed the reserves, gas and timber assets and manages the businesses. The first part of the plan was accomplished with the purchase and operation of a coal tipple and processing plant in Emlyn, Kentucky (the "Emlyn Tipple"). The Emlyn Tipple would produce the high grade stoker coal which resulted in approximately forty percent (40%) of the processed volume in lower grade energy coal. The second part of the plan was to purchase another processing plant and move it to London, Kentucky to process the energy coal.

8. Rather than providing financing as a contribution to the equity of the Debtors, Mr. Kloeber made multiple secured loans to the Debtors to purchase equipment and pay operating expenses. However, after August of 2008, Mr. Kloeber suddenly stopped providing these loans which stalling the implementation of the second part of the business plan. According to a

lawsuit filed in the United States District Court for the Eastern District of Kentucky, Mr. Kloeber claims he is owed approximately $12,300,000 by the Debtors. The lawsuit is styled *David N. Kloeber, Jr. v. Montie's Resources, LLC, et al.*, Case No. 5:11-cv-00313-JMH (the "Kloeber Kentucky Action").

9. After Mr. Kloeber declined to loan additional funds to Emlyn, I purchased his interests in January of 2009. The purchase of Mr. Kloeber's interests were evidenced by a promissory note in the amount of $3,380,753.00, which is included in the amount set forth above. Mr. Kloeber claims the sums allegedly due are him are secured by essentially all assets of Monties, Emlyn and the Bartolomea and Lisa Montanari Family Limited Partnership, as well as being personally guaranteed by my wife and I.

10. At the urging of Globe Specialty Metals, Inc. and certain of its affiliates ("Globe"), in early 2011 Emlyn agreed to ship essentially all of its stoker coal to Globe based on its interest in acquiring an interest in Emlyn. The process went so far as the creation of a Delaware limited liability company in April, 2011, including the drafting of an operating agreement. However, no transaction ever closed. In August of 2011, the offer to acquire a portion of Emlyn was withdrawn and Globe acquired Emlyn's chief competitor, Alden Resources, LLC.

11. Almost immediately thereafter, on August 4, 2011, Globe rejected a large shipment of coal and refused to pay contrary to the terms of the supply contract between the parties and their prior course of dealing. As a result, Emlyn began to experience liquidity issues and fell behind on many of its financial obligations.

12. In conjunction with the acquisition discussions, a Globe affiliate entered into a transaction for Emlyn to acquire a 2001 Caterpillar D10R bulldozer, Serial No. 3KR01551 (the "Dozer"). The purchase agreement for the Dozer called for monthly payments of $30,480.00

and provided that these monthly payments could be setoff against coal sale proceeds due from Globe. Emlyn paid approximately half of the purchase price of the Dozer, however, once Globe refused to pay for or accept coal from Emlyn, Emlyn was unable to make payments. On October 17th, 2011, the Globe affiliate filed suit in the Whitley Circuit Court for possession of the Dozer styled *Globe BG, LLC v. Emlyn Coal Processing, LLC, et al.*, Case No. 11-Ci-00855 (the "Replevin Action"). The Globe affiliate obtained an Ex Parte Writ of Possession for the Dozer on October 21, 2011 and took possession of the Dozer on October 24th, 2011. This seizure of an essential piece of equipment further limited Emlyn's ability to cure defaults and continue generating revenues which were interrupted by Globe's decision to stop purchasing coal.

13.     Emlyn has historically processed over 10,000 tons of stoker coal per month at the Emlyn Tipple, yet processed only 3,700 tons in October, aggravating its cash flow issues. The Emlyn Tipple has production capacity of up to 100 tons of raw coal per hour. In addition to processing coal, Emlyn actively mines high quality coal at the Corn Creek mine owned by Monties in Woodbine, Kentucky and the Swan Pond mine in Owsley County, Kentucky. Emlyn also purchases coal from other mining companies to process and sell.

## II. PROJECTED REVENUES & ADEQUATE PROTECTION

14.     After Globe refused to honor its coal supply contract, Emlyn promptly contacted other potential customers for the Blue Gem coal processed at the Emlyn Tipple and has taken steps to obtain or extend permits for other mining sites. Emlyn recently obtained has 2 new permits to mine certain Blue Gem and Jellico coal seams and expects an additional permit for this purpose in mid-December. The Debtor projects it will be able to more than double revenues in the coming months as it repositions itself in the market to accommodate for the sudden and

devastating actions of Globe. Sales in November are expected to be approximately double what the October sales were and the Debtor continues efforts to acquire new customers.

15. In addition to an increase in revenues, the Debtors believe the value of their coal reserves exceeds the amount of its secured debt, offering adequate protection to such creditors. However, the Debtors believe that liquidation of their coal reserves though foreclosure proceedings outside of Chapter 11 would result in the reserves being sold at a price well below their fair market value.

### III. CONCLUSION

16. The consequential actions of Globe and Mr. Kloeber have reduced the Debtors' cash flow and limited the Debtors' ability to continue operations. Accordingly, the Debtors elected to seek protection through a Chapter 11 bankruptcy in order to reorganize their affairs for the benefit of all of their creditors.

Further Affiant sayeth naught.

_____
BARTOLOMEA MONTANARI

COMMONWEALTH OF KENTUCKY    )
                            )
COUNTY OF __Laurel__         )

Subscribed, sworn to and acknowledged before me by Bartolomea Montanari, in his capacity as Manager of Emlyn Coal Processing, LLC and Montie's Resources, LLC on this 4th day of November, 2011.

_____
NOTARY PUBLIC, STATE AT LARGE, KY

My commission expires: 01/11/12

Z:\Clients\Emlyn Coal Processing\Pleadings\Monties Pleadings\First day aff Bart M 20111104.doc

5