UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| EMLYN COAL PROCESSING, LLC, | Case No. 11-61483 |
| Debtor. | Honorable Joseph M. Scott, Jr. |

**OBJECTION OF DAVID N. KLOEBER, JR. TO MOTION
FOR INTERIM USE OF CASH COLLATERAL**

David N. Kloeber, Jr. ("Kloeber"), secured lender of Emlyn Coal Processing, LLC ("Emlyn" or the "Debtor"), by his undersigned counsel, **FROST BROWN TODD LLC**, pursuant to sections 105, 361, 363, and 552 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure, hereby objects to the *Motion for Interim Use of Cash Collateral* (the "Motion") (Docket No. 9) filed by the Debtor. In support of this Objection, Kloeber respectfully states:

**GENERAL BACKGROUND**

1.     On November 4, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.[1] Also on November 4, 2011, Montie's Resources, LLC ("Montie's") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

---

[1] As more fully addressed in that certain *Emergency Motion of David N. Kloeber, Jr. for an Order (A) Dismissing the Debtor's Chapter 11 Case for Lack of Authority Pursuant to 11 U.S.C. § 1112(b) or, Alternatively, (B) Appointing a Chapter 11 Trustee,* the Debtor did not have authority to file bankruptcy.

1

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. In July of 2007, Mr. Kloeber and Bart J. Montanari ("Montanari") entered into a business transaction wherein Mr. Kloeber agreed to finance the purchase of the Debtor who owned the tipple in Whitley county and certain reserves. Additionally, Mr. Kloeber extended a $500,000 line of credit to the Debtor to facilitate operating cash flow. As part of the transaction, Mr. Kloeber and Montanari each owned 50% of the Debtor.

4. Montanari was charged with operating the Debtor, acquiring, mining, processing and selling coal and Mr. Kloeber (through his staff) handled the day to day accounting for the Debtor, such as payroll, taxes and bill payment. By September of 2007, the Debtor was beginning to experience cash shortages due to a lack of coal production. In November of 2007, a board meeting of the Debtor was called to discuss financial conditions and operations. The existing Notes were both in default at that time and a plan was put in place to improve operations and Mr. Kloeber agreed to increase the credit line.

5. While the Debtor operated successfully for a time, in April of 2008, additional capital improvements were needed to increase and/or improve operations, so Mr. Kloeber agreed to personally guaranty an additional working capital loan from Alliance Bank secured by receivables of the Debtor. As volumes of coal processed by the tipple began to increase, yields on the coal being processed was only 52% to 57%, far less than the projected 75% to 80% yields represented by Montanari.

6. Beginning in April of 2008, Mr. Kloeber made a series of equipment acquisition loans to Montie's in effort to increase the production available to be processed at the tipple. In

September of 2008, Mr. Kloeber again increased the Emlyn credit line to allow the Debtor to acquire additional reserves in Owsley County. Despite virtually unlimited funding, access to the necessary equipment, coal reserves and tipple, neither the Debtor nor Montie's were operating at a sufficient profit to allow for payment of debt service, thereby leaving them in continual default of their obligations to Mr. Kloeber.

7. In November 2008, Montanari felt he was positioned to successfully operate the Debtor on his own and requested to purchase Mr. Kloeber's interest in the Debtor as more fully reflected on that certain term sheet date November 18, 2008 attached hereto as Exhibit A. In January of 2009, the parties consummated the purchase of Mr. Kloeber's interest in the Debtor which Mr. Kloeber agreed to finance. Mr. Kloeber's office transferred all books, records and accounting functions to Montanari in January 2009 as part of this transaction.

8. The parties also entered into the Loan Modification Agreement to reflect the parties' terms regarding repayment of the obligations owed to Mr. Kloeber. As part of those terms, the parties agreed that all interest payments were deemed current as of execution with the first principal payment due March of 2009. However, despite Montanari's belief that the Debtor and/or Montie's were going to cash flow, the first principal payment was missed in March of 2009 and there were no additional payments prior to the Forbearance Agreement. As early as May of 2009, the Debtor had numerous non-monetary defaults for its failure to pay various withholding and coal severance taxes.

9. In September of 2009, Mr. Kloeber retained Kentucky counsel to start foreclosure proceedings against the Debtor, Montie's and the guarantors which culminated in the Forbearance Agreement executed in May of 2010. While the Debtor made some of the required payments under the Forbearance Agreement, by December of 2010, the Debtor was in default of

its payment obligations under the Forbearance Agreement, and never made any further payments to Mr. Kloeber on his outstanding obligations. Upon information and belief, throughout the Debtor's failure to make payments to Mr. Kloeber as well as the taxing authorities, Montanari continued to draw at least $50,000 per month for his personal use through a Minnesota limited liability company named Bella Luca Properties, LLC. In fact, a $25,000 wire transfer was made from the Debtor's account to Bella Luca Properties, LLC on the eve of the bankruptcy filing.

10. Kloeber is a secured creditor of the Debtor. Through various loan documents the Debtor, along with Montie's, Bart J. Montanari, Lisa Montanari, and The Bartolomea and Lisa Montanari Family Limited Partnership (collectively, the "Obligors"), is indebted to Kloeber in the principal amount of $11,574,775.00, with additional interest owed in the amount of $717,607.23 through September 30, 2011, with interest thereon continuing to accrue daily, plus late charges, plus cost of collection and attorneys' fees (the "Indebtedness"). The Indebtedness is secured by substantially all of the assets of the Debtor and Montie's (the "Collateral").

11. On the Petition Date, the Debtor filed the Motion. In the Motion, the Debtor seeks authority from this Court to use Kloeber's cash collateral on an interim basis, subject to the budget attached to the Motion (the "Budget").

## RELIEF REQUESTED

12. Through this Objection and for the reasons set forth herein, Kloeber respectfully requests that this Court deny the Debtor's Motion, and deny the Debtor's request to use cash collateral on an interim and final basis.

## BASIS FOR RELIEF

    **A.    The Collateral Includes Cash Collateral within the meaning provided by Section 363 of the Bankruptcy Code.**

13.    Section 363(a) of the Bankruptcy Code defines cash collateral as:

> cash . . . or other cash equivalents whenever acquired . . . and includes the proceeds, products, offspring, rents or profits . . . subject to a security interest as provided in section 552(b) of this title whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

14.    Section 552(b) of the Bankruptcy Code specifically provides, in pertinent part, that:

> . . . if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, then such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement . . . .

11 U.S.C. § 552(b).

15.    Kloeber holds a valid, properly perfected security interest in the Debtor's cash collateral (the "Cash Collateral"). Accordingly, Kloeber has an interest in cash collateral within the meaning provided by section 363(a) of the Bankruptcy Code.

    **B.    The Debtor's Request for Permission to Use the Cash Collateral should be denied by this Court.**

16.    Under section 363(c)(2) of the Bankruptcy Code, the Debtor may not use cash collateral "unless – (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use . . . in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2)(B). For the reasons set forth herein, Kloeber does not consent to

5

the Debtor's use of the Cash Collateral, and asserts that it is not appropriate for this Court to authorize the use of Kloeber's cash collateral by the Debtor in this chapter 11 case.

17. Use of the Cash Collateral may only be granted if, among other things, Kloeber receives adequate protection of his interests in the Cash Collateral. 11 U.S.C. § 363(c)(2). The phrase "in accordance with the provisions of this section" used in section 363(c)(2)(B) of the Bankruptcy Code incorporates the adequate protection requirement of section 363(e) of the Bankruptcy Code, which requires that this Court "prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

18. Because cash collateral is of a highly volatile nature and subject to rapid dissipation, the Bankruptcy Code requires special protective safeguards by this Court in order to assure that Kloeber is not deprived of his collateral through the unrestricted use of the cash collateral by the Debtor. Pursuant to section 363(p) of the Bankruptcy Code, the Debtor has the burden of establishing that Kloeber is adequately protected. 11 U.S.C. § 363(p); *In re Swedeland Dev. Group. Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *See also In re 5877 Poplar, L.P.*, 268 B.R. 140, 145 (Bankr. W.D. Tenn. 2001) (holding that the debtor has the burden of proof on the issue of adequate protection).

19. It is inappropriate for this Court to authorize the use of the Cash Collateral by the Debtor in this chapter 11 case because the Debtor has clearly failed to meet its burden of demonstrating that Kloeber will be adequately protected from the use of or any diminution in value of the Collateral that may occur from the Debtor's use of the Cash Collateral.

20. Although the Bankruptcy Code does not define adequate protection, section 361 of the Bankruptcy Code provides that adequate protection may be provided by (i) periodic cash payments; (ii) additional or replacement liens; or (iii) other relief resulting in the indubitable

6

equivalent of the secured creditor's interest in the property. *See* 11 U.S.C. § 361. Adequate protection should ensure that Kloeber receives the value for which Kloeber bargained for prior to the Debtor's bankruptcy. *Swedeland*, 16 F.3d at 564.

21.     In the Motion the Debtor listed five creditors, including Mr. Kloeber, with a potential interest in the Debtor's cash collateral.

22.     As adequate protection for the Debtor's use of the Cash Collateral, the Debtor proposes to grant Kloeber replacement liens in post-petition accounts receivable generated by the Debtor's post-petition operations to the extent of the Debtor's use of the Cash Collateral (the "Replacement Liens"). *See Motion,* ¶ 18. In addition, the Budget contemplates adequate protection payments to the five cash collateral creditors in the aggregate amount of $7,500 per week, beginning in the third week after the Petition Date (the "Adequate Protection Payments" and together with the Replacement Liens, the "Proposed Adequate Protection").

23.     The Proposed Adequate Protection is insufficient to protect Kloeber's security interests in the Collateral and the Cash Collateral. The Debtor proposes to pay Kloeber some fraction of $7,500 per week, while interest under the Notes is accruing at the contract rate (not default rate) of interest at 7.25% in the amount of approximately $18,000 per week. Upon information and belief and based upon the historical performance of this Debtor prior to the Petition Date, the projected receipts included by the Debtor in the Budget are questionable and not yet substantiated. Furthermore, the proposed Replacement Liens are worthless to Kloeber if the Debtor operates at a net loss and does not generate sufficient post-petition receivables. If this Court authorizes the Debtor to use the Cash Collateral in a manner consistent with the Budget, Kloeber's interest in the Collateral and the Cash Collateral will erode throughout this chapter 11 case.

24. Based on the foregoing, the Debtor cannot carry its burden of proof on the issue of adequate protection. *See* 11 U.S.C. § 363(p)(1). Accordingly, this Court should deny the Motion.

**C.    If this Court is inclined to allow the Debtor to use the Cash Collateral despite this Objection, the Debtor's use of the Cash Collateral should be limited to only what is absolutely necessary to prevent harm to the Debtor's estate.**

25. Without waiving the foregoing objections to the Debtor's use of the Cash Collateral, Kloeber asserts that any such use on an interim basis should be limited to only what is absolutely necessary to prevent immediate and irreparable harm to the Debtor's estate. Federal Rule of Bankruptcy Procedure 4001(b)(2) provides that this Court may grant the Debtor interim relief, "but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001.

26. The Debtor's Budget contemplates payments to Bart J. Montanari, an insider of the Debtor, in the amount of $7,500 per week – an amount that is equivalent to the Adequate Protection Payments proposed by the Debtor. Payments to insiders are not necessary to avoid immediate and irreparable harm to the Debtor's estate, and thus should not be approved by this Court. Furthermore, Kloeber asserts that $1,000 per week for legal and professional fees, plus $5,000 per week for the attorneys for the Debtor, is unnecessary on an interim basis to avoid harm to the estate. The Debtor should be required to substantiate the expenses that are necessary to avoid immediate and irreparable harm to the estate. Accordingly, in the event that this Court grants the Motion on an interim basis, the Budget should be amended to reflect that only necessary expenses can be paid pursuant to the interim order.

## RESERVATION OF RIGHTS

27.     Kloeber reserves the right to further object to the Debtor's use of the Cash Collateral on any basis described herein and on any and all additional bases. Kloeber specifically reserves the right to object to this Court entering a final order regarding the use of the Cash Collateral.

WHEREFORE, Kloeber respectfully requests that this Court enter an order (i) denying the Motion; (ii) prohibiting the Debtor from using the Cash Collateral; and (iii) granting Kloeber such other and further relief as may be appropriate under the circumstances.

Dated: November 8, 2011                    Respectfully submitted,

FROST BROWN TODD LLC


 */s/ Patricia K. Burgess*
Patricia K. Burgess, Esq.
250 West Main Street, Suite 2800
Lexington, Kentucky 40507
Tel: (859) 231-0000
Fax: (859) 231-0011
E-mail: pburgess@fbtlaw.com

-and-

Joseph B. Wells, Esq.
Lindsey F. Baker, Esq.
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Tel: (513) 651-6737
Fax: (513) 651-6981
E-mail: jbwells@fbtlaw.com
E-mail: lbaker@fbtlaw.com

*Counsel for David N. Kloeber, Jr.*

## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing was served on the 8th day of November, 2011 to the following parties via first class mail, postage prepaid and e-mail, where such e-mail address is provided, and all the parties served by the Court via CM/ECF noticing:

Dean A. Langdon
J. Wesley Harned
DelCotto Law Group PLLC
200 N Upper St
Lexington, KY 40507
**Email: dlangdon@dlgfirm.com**
**Email: wharned@dlgfirm.com**

Gregory A. Napier
Troutman & Napier, PLLC
4740 Firebrook Blvd.
Lexington, KY 40513
(859) 253-0991
**Email: gnapier@troutmannapier.com**

Philip Hanrahan
100 E. Vine St. #500
Lexington, KY 40507
(859) 233-2822
**Email: philip.l.hanrahan@usdoj.gov**

Emlyn Coal Processing LLC
4184 South Hwy. 25 W
Williamsburg, KY 40769

AA Financial Services
P O Box 1806
Ann Arbor, MI 48106

Toyota Financial Services
P O Box 8026
Cedar Rapids, IA 52409-8026

Commonwealth of Kentucky
Office of Employment and Training
Division of Unemployment Insurance
P O Box 498
Frankfort, KY 40602-0948

GBG Financial, LLC
250 West 34th St.
New York NY 10119

Globe BG LLC  
Globe Specialty Metals  
GVG Financials, LLC  
c/o Kevin M. McGuire, Esq.  
Jackson Kelly PLLC  
P O Box 2150  
Lexington KY 40588-9945  

Emeco  
300 Emeco Way  
London KY 40741  
Hinkle Contracting Corporation  
P O Box 200  
Paris KY 40362  

Whayne Supply  
c/o Jerred P. Roth, Esq.  
300 W. Vine St. Suite 600  
Lexington KY 40507-1660  

Kentucky Dept. of Revenue  
Legal Branch - Bankruptcy Section  
P O Box 5222  
Frankfort KY 40602  
**VIA EMAIL: barbara.kenney@ky.gov**  

Internal Revenue Service  
P.O. Box 7346  
Philadelphia PA 19101-7346  

Tennessee State Treasurer  
Tennessee State Capitol, 1st Floor  
600 Charlotte Avenue  
Nashville, TN 37243-0225  
**VIA EMAIL: blake.fontenay@tn.gov**  

Office of Surface Mining  
P O Box 979068  
St. Louis, MO 63197-9000  

BB&T Bank  
1390 Master Street  
Corbin KY 40701  

Canada Brothers Auto Parts  
504 Main Street  
Williamsburg KY 40769  

Card Member Services  
PO Box 790408  
St. Louis MO 63179-0408  

Cook & Cheek CPA  
302 Falls St  
London KY 40741

Dale Greer and Deborah Greer
c/o Jason E. Williams, Esq.
P O Box 3199
London KY 40743-3199

Dept. of Natural Resources
Office of Adminstrative Hearings
35-36 Fountain Place
Frankfort KY 40601

First Insurance Funding
PO Box 66468
Chicago IL 60666-0468

Frattalone Mining
3205 Spruce St
Little Canada MN 55117

Hellmuth & Johnson
8050 W 78th St
Edina MN 55439

Ikerd Mining
521 Crane Rd
Somerset KY 42501

Kentucky Unemployment Ins Fund
250 W. Main Street
Suite 900
Lexington KY 40507

Mine Safety and Health Administration
P O Box 790390
Saint Louis MO 63179-0390

Progressive Financial Services
PO Box 24216
Tempe AZ 85285

RT Welding/Fabrication
PO Box 1686
Harlan KY 40831

Sears, Ivel Keith and Patricia
c/o Stephen M. Jones, Esq.
P O Box 604
London KY 40743

Straight Creek, LLC
4060 Randall Farm Road
Atlanta GA 30339

Fountain Leasing
P O Box 51768
Knoxville, TN 37950

Straight Creek Leasing
3350 Riverwood Pkwy.
Suite 1900
Atlanta, GA 30339

/s/ Patricia K. Burgess

*Counsel for David N. Kloeber, Jr.*